UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
ROGER A. CONGRESS,              )
    3022 South Abington Street  )
    Arlington, Virginia 22206,  )
                                )
                  Plaintiff,    )
                                )
        v.                      )   Civil Action No. _____
                                )
JELENA McWILLIAMS,              )
    Chairman,                   )
    Federal Deposit Insurance Corp., )
    550 17th Street, N.W.,      )
    Washington, D.C.  20429,    )
                                )
                  Defendant.    )
                                )
```

## COMPLAINT
(Employment Discrimination)

### Introduction

1.      Plaintiff Roger A. Congress brings this action pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq.*, and 42 U.S.C. § 1981a, to redress unlawful employment discrimination, including retaliation, perpetrated against him by the Federal Deposit Insurance Corporation ("FDIC"), a wholly owned corporation of the United States government. Specifically, plaintiff contends that his FDIC supervisors (a) discriminated against him based on his disabilities by mistreating him on the job and denying him the reasonable accommodations for his disabilities (on June 5, 2018 / reconsideration denied on July 2, 2018), (b) retaliated against him because he engaged in the protected activity of seeking reasonable accommodations for his disabilities by (i) unfairly placing him on a performance improvement plan or "PIP" (on June 7, 2018), (ii) threatening

his pension and otherwise bullying him into "voluntarily" resigning, and (iii) proposing to suspend him without pay (on October 9, 2018), and (c) discriminating against him based on his disabilities and retaliating against him for seeking reasonable accommodation for those disabilities by (i) unfairly placing him on a performance improvement plan or "PIP" (on June 7, 2018), (ii) threatening his pension and otherwise bullying him into "voluntarily" resigning, and (iii) proposing to suspend him without pay (on October 9, 2018), and forcing him to involuntarily retire from federal serve in order end the mistreatment and preserve his health (retirement effective on October 31, 2018).

### Jurisdiction

2.      This Court has jurisdiction over the subject matter of this civil action pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Subject matter jurisdiction is also pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

### Venue

3.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims occurred in this judicial district, which is where plaintiff worked for the FDIC, and the defendant is located, has offices, and conducts business in this judicial district.

### Exhaustion of Administrative Remedies

4.      All of the necessary administrative prerequisites for filing the instant civil action have been met: plaintiff initially lodged his formal administrative EEO complaint (FDICEO-18-33), on October 17, 2018 – having initially contacted an EEO Counselor at FDIC on July 13, 2018, and having received a notice of right to file a formal EEO complaint on October 15, 2018 – which formal EEO administrative complaint was deemed amended on October 25, 2018 (the date on which

plaintiff notified the FDIC that he was retiring involuntarily to end the discrimination and preserve his health) to add the discrimination/retaliation claim of forced involuntary retirement (the retirement being effective on October 31, 2018). The FDIC Office of Minority and Women Inclusion ("OMWI" – FDIC's EEO office) conducted an administrative investigation with regard to plaintiff's amended formal EEO administrative complaint and issued a report of investigation ("ROI") with respect to that investigation on April 19, 2019. No final decision has yet been issued by the FDIC with respect to plaintiff's amended formal EEO administrative complaint though more than 180 days have gone by since all plaintiff's administrative claims were lodged with FDIC's EEO office.

## Parties

5.  Plaintiff Roger A. Congress is a citizen of the United States and a resident of the Commonwealth of Virginia. He is disabled within the meaning of the Rehabilitation Act. At all times relevant to the claims made herein up until his being forced into retirement effective October 31, 2018, plaintiff was employed by the FDIC within the District of Columbia as an Information Management Analyst, CG-301-14, in the Information Security and Technology Services Section of the Corporation's Division of Depositor and Consumer Protection.

6.  Defendant Jelena McWilliams is the Chairman of the FDIC, which is a government corporation within the Executive Branch of the Government of the United States that has had more than 500 employees in 20 or more calendar weeks during the past year. Its Chairman is responsible for the personnel actions, omissions and practices within FDIC and is here sued in her official capacity as head of FDIC only.

## Statement of Facts

7.  At the time of his being forced to retire on October 31, 2018, plaintiff had over 27 years of federal service and had been with the FDIC for of those many years, most lately as an Information Management Analyst, CG-301-14, in the Information Security and Technology Services Section of the Division of Depositor and Consumer Protection of the Corporation, a position located in Washington, D.C.

8.  In 2012, plaintiff accepted the supervisory job over the Information Security and Technology Services Section a section - a Supervisory Information Management Analyst position at the CM-1 grade level. He performed well in this job for several years while his supervisor was Nann Wright. However, when Ms. Wright retired, plaintiff was at first under the direct supervision of Nikita Pearson, and in 2015, she unfairly downgraded the ratings he had given his subordinates in the Information Security and Technology Services Section although all these ratings were well deserved as the staff of the Section were able employees. In any case, as a consequence, plaintiff became increasingly unhappy and started to experience depression and anxiety. Ultimately, in late 2015, plaintiff voluntarily accepted a downgrade back to a staff level position at the CG-14 level.

9.  Upon his acceptance of this voluntary downgrade back to a staff level, management reassigned him to the same unit he had supervised, placing him under the person chosen to replace him a section chief, Cristal Perpignon, thereby making Nikita Pearson his second-level supervisor. While plaintiff was readily welcomed back to the staff by the rank and file of the Information Security and Technology Services Section, management at the Division of Depositor and Consumer Protection seemed annoyed with him because he had left his supervisory job. He was assigned as the Internet Coordinator for the Information Security and Technology Services Section, although he had no knowledge of the area of work he was assigned to perform, no experience with it, and no

training in it. Accordingly, plaintiff's depression and anxiety worsened and, as a result, he began to suffer panic attacks.

10. Plaintiff's treating physician referred him to a psychologist for treatment of the depression and anxiety – which continue to this day – and prescribed anti-depression medication. Plaintiff sought to telework due to his mental/emotional condition so at least he could concentrate on the tough job at hand, but his management denied him telework, and instead placed him under a leave restriction because he had used up most of his sick leave and annual leave due to that my mental condition (depression, anxiety and panic attacks) and a physical long-term physical ailment (severe arthritis). At this point, plaintiff was referred to a psychiatrist by his physician, at the urging of his treating psychologist, for medication management. His treating psychiatrist prescribed anti-anxiety and anti-panic attack medication, which plaintiff continues to take to this day.

11. Plaintiff's first performance appraisal since becoming a non-manager again was for 2016 and it was a "3" (fully satisfactory), but it was downgraded to "2" (needs improvement) in 2017 because of an alleged failure to make progress in his new position job which involves code writing and other technical aspects that for which he was neither trained nor in which had any experienced whatsoever. Also, the computer language in which plaintiff was required to work was still being employed by only a handful of users and was being only minimally supported by the vendor so there was no commercial training available or anywhere for plaintiff to turn for support to help bring him up to speed.

12. Accordingly, given plaintiff's mental/emotional condition, he sought an accommodation of telework in order to at least allow him to concentrate on the difficult task at hand, but this accommodation was denied on the excuse that he was on leave restriction. Also, the Reasonable Accommodations Coordinator ("RAC"), Monica Flint of OMWI, informed him that at

FDIC it was near impossible to get a psychological disability treated like a physical disability for reasonable accommodations purposes.

13.     Meanwhile, in 2018, the Union, through Tim Kalyvas, informed plaintiff that management had changed his rating in the mid-year appraisal to a "1" (unsatisfactory) and was talking about putting him on a PIP. Further, the Union representative advised plaintiff that at FDIC no one successfully gets through a PIP. It was about this time that the RAC, Monica Flint, informed plaintiff that she had spoken with Cristal Perpignon, his immediate supervisor, and had been told that plaintiff's reasonable accommodations request for telework had been denied. All this information came through the Union or the RAC as plaintiff had not discussed his unsatisfactory rating, a possible PIP, removal, or reasonable accommodation with his management, though he did send a detailed email to his two managers, Cristal Perpignon and Nikita Pearson, complaining about the treatment accorded him (and his former staff), copying it to the staff.

14.     Also, plaintiff's psychiatrist sent a brief note supporting his application for teleworking as a reasonable accommodation for his disabilities. Then, the Union advised plaintiff that his management had seen some unspecified threat in his request for accommodation and/or his emailed complaint about mistreatment (wherein he noted that psychological disability is not treated like physical disability for accommodation purposes at FDIC), and claiming to be afraid he would "go postal." wanted plaintiff to leave FDIC's employ and would place him on telework – though denied him as an accommodation. The Union said that management would be proposing that plaintiff telework through August 31, 2018, when he would voluntarily retire, and thereby leave FDIC with a full pension (27 yrs. under FERS at a CG-14). However, management also indicated through the Union that plaintiff would have to voluntarily agree to (a) retire at the end of August 2018 and (b) not to sue FDIC. The Union also passed along management's threat that if plaintiff

did not agree to these conditions, management would terminate him for "misconduct" (*i.e.*, the alleged threat to "go postal") and plaintiff would then lose his pension.

15. Plaintiff received this "proposal" from management in the form of an Memorandum of Understanding ("MOU") on May 25, 2018. Thereafter, he retained counsel, having formally sought a reasonable accommodations for his disabilities. In short order thereafter – on June 7, 2018 – plaintiff was placed on a PIP, and was later told that he had not successfully performed while on the PIP. At that point, management proposed that plaintiff be suspended for three days without pay for telling his "customers" of the troubles he had in satisfying their organizational needs. This was on October 9, 2018, his formal request for reasonable accommodations having been denied on June 5, 2018 and reconsideration of that decision having also been denied on July 2, 2018.

16. Despondent, plaintiff could see no way to relieve his psychological suffering (depression, anxiety, panic attacks) but to resign and retire though he wanted to work several more years before doing so. Accordingly, he retired effective October 31, 2018, having announced his intention to do on October 21, 2018.

## Statement of Claim

**Failure to Provide Reasonable Accommodations –**

17. In refusing / failing to provide plaintiff with the reasonable accommodations of a change in work assignment to eliminate his having to personally provide coding services and to allow him to telework, defendant, through management at the FDIC, violated the defendant Rehabilitation Act of 1973. as amended, 29 U.S.C. §§ 701 *et seq.*, and 42 U.S.C. § 1981a, causing plaintiff to suffer injury to his career and his professional reputation, as well as causing him to suffer emotional and psychological pain and suffering, embarrassment and humiliation.

**Discrimination Based on Disability –**

18. In mistreating plaintiff on the job, unfairly placing him on a PIP, threatening his pension to get him to retire earlier than he desired and otherwise mistreating and bullying him and, ultimately, by forcing him to involuntarily retire from federal service in order end the mistreatment and preserve his health, all because he was disabled, defendant, through management at the FDIC, violated the defendant Rehabilitation Act of 1973. as amended, 29 U.S.C. §§ 701 *et seq.*, and 42 U.S.C. § 1981a, causing plaintiff to suffer injury to his career and his professional reputation, as well as causing him to suffer emotional and psychological pain and suffering, embarrassment and humiliation.

**Retaliation for Seeking Reasonable Accommodations of His Disabilities –**

19. In unfairly placing him on a performance improvement plan (PIP), threatening his pension and otherwise bullying him into "voluntarily" resigning, proposing to suspend him without pay, and forcing him to involuntarily retire from federal service in order end the mistreatment and preserve his health, because he had sought reasonable accommodations for his disabilities, defendant, through management at the FDIC, violated the Rehabilitation Act of 1973. as amended, 29 U.S.C. §§ 701 *et seq.*, and 42 U.S.C. § 1981a, causing plaintiff to suffer injury to his career and his professional reputation, as well as causing him to suffer emotional and psychological pain and suffering, embarrassment and humiliation.

20. As a direct and proximate result of this unlawful discrimination and retaliation, plaintiff has suffered and continues to suffer economic losses, lost pay and benefits, lost career benefits and lost career opportunities, lost retirement benefits, injuries in the form of personal and professional humiliation and embarrassment, as well as other emotional distress and pain and suffering.

**Prayer for Relief**

WHEREFORE, plaintiff prays that this Court enter judgment in his favor and against defendant on the claims of discrimination and retaliation pursuant to the Rehabilitation Act, as amended, and provide him with the following relief:

(a) award plaintiff compensatory damages against defendant in the amount of $300,000.00, plus interest thereon;

(b) order defendant to reinstate plaintiff to the position of Information Management Analyst, CG-301-14, in the Information Security and Technology Services Section of the Corporation's Division of Depositor and Consumer Protection retroactive to October 31, 2018;

(c) order defendant to alter the annual performance ratings provided to plaintiff for both 2017 and 2018 to fully successful;

(d) order defendant to provide plaintiff with full back pay and other benefits, including bonuses, in light of the ordered reinstatement of his employment and the alteration of his annual performance appraisals for 2017 and 2018;

(e) order defendant to provide plaintiff the reasonable accommodations he has requested, including relieving him of the duty to directly perform coding and similar duties and authorizing him to telework at least three days per week;

(f) order defendant to provide plaintiff with at least fully successful performance ratings for all times relevant to this complaint subsequent to 2018;

(g) order defendant to restore all annual leave and sick leave that plaintiff may have used as a consequence of the discriminatory/retaliatory treatment to which he was subjected by FDIC management;

(h)  enjoin defendant from discriminating or retaliating against plaintiff further;

(i)  award plaintiff the costs of bringing and maintaining this civil action and the administrative complaint that necessarily preceded it, including reasonable attorneys' fees; and

(j)  award plaintiff such other and further relief as the interests of justice may require.

### Jury Demand

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

_____
David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
Tel (202) 842-0300
Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff